**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
Civil Action No.: 2:24-cv-993-RMG**

| | |
|---|---|
| **BASF CORPORATION, as successor in interest to CIBA CORPORTATION,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**AIU INSURANCE CORPORATION, et al.**<br><br>    **Defendants.** | |

**COLISEUM REINSURANCE COMPANY'S MOTION TO DISMISS OR TRANSFER**

## TABLE OF CONTENTS

**Page**

I.   SUMMARY OF THE NATURE OF THE CASE .................................................................. 1

II.   STATEMENT OF FACTS ................................................................................................... 2

III.   THE COURT SHOULD DISMISS THIS CASE BECAUSE IT LACKS PERSONAL
JURISDICTION OVER SOME OR ALL OF THE DEFENDANTS ........................................ 3

  A.   Legal Standard for Personal Jurisdiction ..................................................................... 3

  B.   The Court Lacks General Jurisdiction Over The Defendants ............................................ 5

  C.   The Court Lacks Specific Jurisdiction Over The Defendants............................................ 6

    1.   The Defendants Did Not Purposely Avail Themselves To The Privilege Of Conducting
Activities In South Carolina ..................................................................................... 7

    2.   The Exercise Of Personal Jurisdiction Over The Defendants Would Not Be
Constitutionally Reasonable .................................................................................... 12

IV.   THE COURT SHOULD DISMISS THIS CASE PURSUANT TO THE COMMON LAW
DOCTRINE OF *FORUM NON CONVENIENS* OR, IN THE ALTERNATIVE, TRANSFER
THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK ......................................... 16

V.   THERE ARE OTHER GROUNDS UPON WHICH THIS ACTION SHOULD BE
DISMISSED OR, IN THE ALTERNATIVE, STAYED ............................................................. 18

VI.   CONCLUSION.................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdulla v. S. Bank*,
439 S.C. 391, 887 S.E.2d 138 (Ct. App. 2023).............................................................4

*In re Aqueous Film-Forming Foams Prod. Liab. Litig.*,
No. CV 2:18-2873-RMG, 2023 WL 6846676 (D.S.C. Oct. 17, 2023)....................5, 6, 15, 18

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)....................................................15

*BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition
Program Admin.*,
884 F.3d 463 (4th Cir. 2018), *as amended* (Mar. 27, 2018) ......................................2

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).................................4, 12, 13

*In re Celotex Corp.*,
124 F.3d 619 (4th Cir. 1997) ............................................................................5

*Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*,
259 F.3d 209 (4th Cir. 2001) ............................................................................4

*Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*,
569 F.3d 189 (4th Cir. 2009) ..........................................................................17

*Daimler AG v. Bauman*,
571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)..........................................5, 6

*Ellicott Mach. Corp. v. John Holland Party Ltd.*,
995 F.2d 474 (4th Cir. 1993) ..........................................................................13

*ESAB Grp., Inc. v. Zurich Ins. PLC*,
685 F.3d 376 (4th Cir. 2012) ....................................................6, 7, 8, 12, 14, 15

*Etienne v. Wartsilla N.A., Inc.*,
667 F.Supp.3d 235 (S.D. Miss. 2023)..............................................................10, 11

*Fidrych v. Marriott Int'l, Inc.*,
952 F.3d 124 (4th Cir. 2020) ..........................................................................5, 6

*Foster v. Arletty 3 Sarl*,
278 F.3d 409 (4th Cir. 2002) ............................................................................15

*Givens v. Erie Ins. Co.*,
   No. CV 6:22-00842-HMH, 2022 WL 2759167 (D.S.C. Jul. 14, 2022)...................................10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)......................................................5, 6

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011)....................................4, 7, 9, 11, 12

*Jiali Tang v. Synutra Int'l, Inc.*,
   656 F.3d 242 (4th Cir. 2011) .........................................................................................16, 17

*Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*,
   938 F.3d 874 (7th Cir. 2019) ...................................................................................8, 9, 10, 11, 12

*New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*,
   416 F.3d 290 (4th Cir. 2005) ..............................................................................................5

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*,
   149 F.3d 1086 (10th Cir. 1998) .........................................................................................13

*Perdue Foods LLC v. BRF S.A.*,
   814 F.3d 185 (4th Cir. 2016) ..............................................................................................7

*Philips v. Pitt Cnty. Mem'l Hosp.*,
   572 F.3d 176 (4th Cir. 2009) ..............................................................................................3

*Rosen v. Halperns' Steak & Seafood Co.*,
   No. 4:18-CV-00857-RBH, 2019 WL 109327 (D.S.C. Jan. 4, 2019).......................................7

*Rossman v. State Farm Mut. Auto. Ins. Co.*,
   832 F.2d 282 (4th Cir. 1987) .......................................................................8, 9, 10, 12, 14

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007)........................................................16

*TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*,
   488 F.3d 1282 (10th Cir. 2007) ....................................................................................13, 15

*Ticketmaster-New York, Inc. v. Alioto*,
   26 F.3d 201 (1st Cir. 1994)..............................................................................................13

*Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*,
   791 F.3d 436 (4th Cir. 2015) ............................................................................................17

*United States v. Batato*,
   833 F.3d 413 (4th Cir. 2016) ............................................................................................13

*United States v. Fowler*,
   58 F.4th 142 (4th Cir. 2023) ..................................................................................3

*Universal Leather, LLC v. Koro AR, S.A.*,
   773 F.3d 553 (4th Cir. 2014) .................................................................................5

*Walden v. Fiore*,
   571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)................................7, 8, 9, 10, 11, 12

*Whitaker v. Monroe Staffing Servs., LLC*,
   42 F.4th 200 (4th Cir. 2022) ................................................................................16

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)......................................9, 11

**Statutes**

28 U.S.C. § 1404 ..................................................................................................1, 2

**Federal Rules**

Fed. R. Civ. P. 12(b)(2)........................................................................................1, 5, 19

Fed. R. Civ. P. 12(b)(7)........................................................................................18

Fed. R. Evid. 201(b)(2)........................................................................................3

**Secondary Sources**

Richard L. Haig (ed.), 1 Bus. & Com. Litig. Fed. Cts. § 2:27 (5th ed. Nov. 2022) .....................13

Defendant Coliseum Reinsurance Company, as successor by merger to AXA Insurance Company, formerly known as Colonia Insurance Company, a New York Corporation (identified in the Complaint as AXA Insurance Company and referred to herein as "Coliseum"), through their undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(2), the common law doctrine of *forum non conveniens*, and 28 U.S.C. § 1404, hereby respectfully moves this Court to dismiss the Complaint filed by BASF Corporation ("BASF") or, in the alternative, transfer this action to the U.S. District Court for the Southern District of New York.  As noted below, Coliseum also joins and incorporates by reference the arguments of AIU Insurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, and National Union Fire Insurance Company of Pittsburgh, Pa., (collectively, the "Partial AIU Insurers") and Allstate Insurance Company in their respective Motions to Dismiss.

## I.    <u>SUMMARY OF THE NATURE OF THE CASE</u>

This is an insurance coverage action in which BASF is seeking a declaration that several of its insurers (the "Defendants") owe a duty to pay for the defense and indemnity that BASF has or will incur in connection with underlying lawsuits.  However, neither BASF nor any of the Defendants are citizens of South Carolina.  None of the insurance policies are alleged to have been issued in South Carolina.  Defendants do not have the requisite minimum contacts with South Carolina and it would be constitutionally impermissible to force them to litigate in South Carolina. Accordingly, this Court lacks personal jurisdiction and should dismiss this case.

Additionally, there are competing actions in the U.S. District Court for the Southern District of New York (the "New York Action") and in New Jersey State court (the "New Jersey Action") involving BASF's disputes with its insurers in connection with the same underlying lawsuits.  Either New York or New Jersey are more appropriate places for litigation of this dispute

because several Defendants are allegedly located and issued policies in New York, while BASF is located in New Jersey. Moreover, both of those competing actions have additional parties that are missing from this action. Therefore, complete resolution of BASF's disputes with its insurers cannot be achieved in South Carolina, and can only be achieved in other forums. Accordingly, even if this Court has jurisdiction (which it does not), this dispute should be dismissed pursuant to the common law doctrine of *forum non conveniens* or, alternatively, transferred.[1]

## II.    <u>STATEMENT OF FACTS[2]</u>

From approximately 1976 until 1991, BASF's predecessor allegedly manufactured and sold products containing chemicals known as per- and polyfluoroalkyl substances ("PFAS"). Doc. 1 at ECF pp. 2 and 11. BASF's predecessors' products allegedly caused bodily injury, personal injury and property damage. Doc. 1 at ECF pp. 2 and 12. Allegedly injured individuals, water providers, governmental authorities, and others have filed thousands of underlying lawsuits against BASF. Doc. 1 at ECF pp. 2 and 12.

BASF has sued numerous insurance companies that allegedly provided umbrella and excess insurance to BASF from 1976 until 1986. Doc. 1 at ECF p. 3. BASF alleges that the Defendants' "insurance policies require the Defendant Insurers to pay all sums, including the

---

[1] As discussed below, the New York Action was filed in New York State court, removed to the U.S. District Court for the Southern District of New York, and is now the subject of a motion to remand. Because it is difficult to predict whether the New York Action will be in state or federal court when this Motion is decided, Coliseum respectfully seeks dismissal pursuant to *forum non conveniens* or, in the alternative, a transfer of this action pursuant to 28 U.S.C. § 1404. The analysis under *forum non conveniens* and 28 U.S.C. § 1404 are similar. *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 471 FN6 (4th Cir. 2018), *as amended* (Mar. 27, 2018). While Coliseum focuses its argument on *forum non conveniens*, Coliseum respectfully submits that, in this case, the result is the same under either approach: South Carolina is not the appropriate forum for this dispute.

[2] For the purposes of this Motion, Coliseum refers to the allegations in BASF's Complaint as if they were true. Coliseum reserves the right to challenge these allegations in the future.

payment of defense litigation fees and expenses, for which [BASF and/or its predecessors] shall become legally obligated to pay which arise out of an occurrence." Doc. 1 at ECF p. 3. BASF also alleges that the Defendants included South Carolina within the coverage territory of their policies or did not include any relevant territorial limitation on their policies. Doc. 1 at ECF p. 10.

This is one of three lawsuits that BASF is litigating with its insurers in connection with the same underlying PFAS injury claims:

1. First, BASF filed this lawsuit on February 27, 2024.

2. Second, on March 4, 2024, Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies (collectively, "London Insurers," which are not defendants in this lawsuit) sued BASF and BASF's alleged insurers in New York State court (the "New York action"). On March 5, 2024, BASF removed the New York Action to the U.S. District Court for the Southern District of New York. See London Insurers' Complaint and BASF's Notice of Removal in the New York Action, attached as Exhibit A. The London Insurers have moved to remand the New York Action back to state court, and that motion remains pending. See London Insurers' Motion to Remand, attached as Exhibit B.

3. Finally, on March 13, 2024, BASF filed its own competing action in New Jersey State court against these Defendants and the London Insurers (the "New Jersey Action"). See BASF's Complaint filed in the New Jersey Action, attached as Exhibit C. [3]

For the Court's convenience, a list of the insurers involved in each of the three competing actions is set forth in Appendix A, accompanying this brief.

## III.    THE COURT SHOULD DISMISS THIS CASE BECAUSE IT LACKS PERSONAL JURISDICTION OVER SOME OR ALL OF THE DEFENDANTS

### A.    Legal Standard for Personal Jurisdiction

---

[3] The Court may take judicial notice of facts that are not subject to reasonable dispute because the can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). Accordingly, the Court may properly take judicial notice of matters of public record. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also United States v. Fowler*, 58 F.4th 142, 152 (4th Cir. 2023) (noting that the most frequent use of judicial notice of ascertainable facts is in noticing the content of court records).

The Due Process Clause of the United States Constitution protects an individual's liberty interest by preventing them from being subject to binding judgments in a forum with which they have established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S. Ct. 2174, 2181, 85 L. Ed. 2d 528 (1985). By requiring that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. *Id.* at 472. A court may only subject a defendant to judgment when the defendant has sufficient contacts with the sovereign such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 131 S. Ct. 2780, 2783, 180 L. Ed. 2d 765 (2011).

For a District Court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized by the long-arm statute of the forum state; and (2) the exercise of personal jurisdiction must also comport with the United States Constitution's due process requirements. *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Courts sitting in South Carolina have construed South Carolina's long-arm statute to extend to the outer limits of the Due Process Clause in the Fourteenth Amendment of the U.S. Constitution. *Abdulla v. S. Bank*, 439 S.C. 391, 401, 887 S.E.2d 138, 143 (Ct. App. 2023). Accordingly, the application of the long-arm statute is coextensive with the application of the Due Process Clause, and this Motion focuses on whether the exercise of personal jurisdiction in this case would violate the strictures of Due Process Clause in the U.S. Constitution. *See id.* (applying that analysis).

When a defendant moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the *plaintiff* bears the burden of proving the existence of jurisdiction to the District Court. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005); *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). When a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, the burden on the plaintiff is to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. *In re Celotex Corp.*, 124 F.3d at 628; *see also*, *e.g.*, *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. CV 2:18-2873-RMG, 2023 WL 6846676, at *2 (D.S.C. Oct. 17, 2023).

## B.    The Court Lacks General Jurisdiction Over The Defendants

There are two types of jurisdiction: (1) general jurisdiction; and (2) specific jurisdiction. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014). A court may assert general jurisdiction over corporations to hear all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011). For a corporation, the paradigm forum for the exercise of general jurisdiction is where a corporation exists in two locations: (1) where it is incorporated; and (2) where it maintains its principal place of business. *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020). Only in an exceptional case will a corporation's operations in a forum other than its formal place of incorporation or principal place of business be so substantial and of such a nature as to render the corporation at home in that State. *Daimler AG v. Bauman*, 571 U.S. 117, 139 FN19, 134 S. Ct. 746, 761, 187 L. Ed. 2d 624 (2014).

None of the Defendants are alleged to be incorporated in South Carolina or have their principal place of business in South Carolina.  Doc. 1 at ECF pp. 5-10.  Although some (but not all) of the Defendants are allegedly licensed to do business in South Carolina, this Court has already correctly decided that a corporation's licensure to conduct business is South Carolina does not subject that corporation to general jurisdiction in South Carolina.  *See In re Aqueous Film-Forming Foams*, 2023 WL 6846676, at *5 (citing *Fidrych*, 952 F.3d at 135 ("… the Plaintiffs contend that… foreign corporations who chose to obtain a certificate of authority in South Carolina have consented to general jurisdiction in South Carolina.  We disagree.")).  Accordingly, this Court lacks general jurisdiction over these Defendants.

### C.    The Court Lacks Specific Jurisdiction Over The Defendants

Specific, or "case-linked," jurisdiction depends on an affiliation between the forum and the underlying controversy.  *Goodyear*, 564 U.S. at 919.  Principally, this is an activity or occurrence that takes place in the forum State and is, therefore, subject to the State's regulation.  *Id*.  In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.  *Id*.  Specific jurisdiction applies to cases in which the suit arises out of or relates to the defendant's contacts with the forum.  *Daimler AG*, 571 U.S. at 118.

In the Fourth Circuit, courts use a three-part inquiry to determine whether the exercise of specific jurisdiction over a party comports with the Due Process Clause in the U.S. Constitution.  *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012).  Under this test, courts consider: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally

reasonable. *Id.* Importantly, a plaintiff must prevail on each prong in order for the court to exercise personal jurisdiction over the defendant in this case. *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016); *Rosen v. Halperns' Steak & Seafood Co.*, No. 4:18-CV-00857-RBH, 2019 WL 109327, at *3 (D.S.C. Jan. 4, 2019).

As discussed below, the first and third prongs of this test are not met here, which precludes this Court in South Carolina from having specific jurisdiction over the Defendants.

### 1. The Defendants Did <u>Not</u> Purposely Avail Themselves Of The Privilege Of Conducting Activities In South Carolina

To meet the first prong, the court must find that the defendant has established "minimum contacts" with the forum state by purposefully availing itself of the privilege of conducting business under the state's laws. *ESAB*, 685 F.3d at 392. A defendant's actions that are directed at the forum state in only a random, fortuitous, or attenuated way are insufficient to support jurisdiction. *Id.* For example, merely placing a product into the stream of commerce foreseeing that it might ultimately reach the forum state is *insufficient* to create jurisdiction; instead, minimum contacts necessary to establish jurisdiction exist when the defendant targets the forum state. *Id.* (citing *Nicastro*, 564 U.S. at 882 ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State")). Importantly, the defendant's conduct – <u>not</u> the plaintiff's contacts with the defendant and forum – must form the necessary connection with the forum state that is the basis for its jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 285, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014).

The Defendants recognize that in *ESAB*, 685 F.3d at 392, the Court of Appeals acknowledged "unique aspects of the business of insurance relevant to the evaluation of an insurer's contacts with a forum." Specifically, the U.S. Court of Appeals held that, in certain

7

circumstances, an out-of-state insurer could establish minimum contacts necessary to establish jurisdiction if the insurer agreed to furnish a defense to its policyholder within a specified policy territory. *Id*. This is because, according to the Court of Appeals, by agreeing to furnish a defense to its policyholder in the state, the insurer indicates its willingness to be haled into court in the same state. *Id*. The Court of Appeals' decision in *ESAB* cited and applied the earlier Court of Appeals' decision in *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282 (4th Cir. 1987), which reached the same conclusion. *Id*. at 286. The *Rossman* decision turned on the Court of Appeal's view that an insurer that promised to defend its insured could "foresee" being haled into court where its insureds were sued within the coverage territory. *Id*.

However, after *ESAB* and *Rossman* were decided, the U.S. Supreme Court in *Walden*, 571 U.S. at 289, held that the requisite "minimum contacts" with the forum state were not created simply because the defendant knew of the plaintiff's contacts with the forum state and could foresee that it might be harmed in the forum state. After *Walden*, in *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874 (7th Cir. 2019), Judge Barrett (now Justice Barrett) clarified the application of the "minimum contact" analysis in the context of litigation against insurers.

The *Lexington* court held that the fact that the insurers' policies contained a worldwide coverage provision did not create the minimum contacts necessary to establish personal jurisdiction. *Id*. at 880. The *Lexington* Court considered the argument that the insurers derived financial benefits from the more extensive geographic coverage, but rejected it:

> As an initial matter, gaining a financial benefit by including Wisconsin in a territory of coverage is not the equivalent of "doing business in" Wisconsin. If a parent bets her fifth grader fifty dollars that it will rain in every single state during the month of June, she hasn't "done business" in all fifty states even though her profit will increase or decrease based on what happens in each—and even though her risk and potential profit would have been less if she had limited the territory to twenty-five states. A defendant does business in a forum state when it "purposefully avail[s] itself of the privilege of

8

*conducting activities within* the forum State, thus invoking the benefits and protections of its laws." *Id*. at 881 (citations omitted and emphasis original).

The *Lexington* court noted that the Supreme Court has "squarely rejected the proposition that such collateral financial benefits are purposeful contacts." *Id*. (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299, 100 S. Ct. 559, 568, 62 L. Ed. 2d 490 (1980) ("… financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State")).

The *Lexington* court also held that the "minimum contacts" analysis was <u>not</u> satisfied because the worldwide coverage clauses in the relevant policies made it "foreseeable" that the insurers might be sued in the forum state. *Lexington*, 938 F.3d at 881. This is because foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause. *Id*. (citing *World-Wide Volkswagen*, 444 U.S. at 295). On the contrary, permitting jurisdiction based on foreseeability is inconsistent with the premises of lawful judicial power. *Id*. (citing *Nicastro*, 564 U.S. at 883). The *Lexington* Court noted that "… the Supreme Court has continued to stress that the foreseeability of suit in a forum is not enough to justify the state's exercise of jurisdiction over a defendant." *Id*. at 884 (citing *Walden*, 571 U.S. at 284-86, and *Nicastro*, 564 U.S. at 882-83).

Accordingly, the *Lexington* court concluded that the worldwide coverage clause defined the territorial scope of the insurers' obligation, "[b]ut the presence of a state within the scope of coverage creates no purposeful connection between the insurers and *that state*." *Id*. at 882 (emphasis original). The *Lexington* court noted in *dicta* that certain other decisions, such as *Rossman*, held that insurers should expect to be haled into court where they owe a duty to defend. *Lexington*, 938 F.3d at 882-83. However, because the insurers in *Lexington* did not owe a duty to

9

defend, and instead merely had a right to defend, the *Lexington* court held that *Rossman* was <u>not</u> controlling. *Id*. at 883 ("The absence of a duty-to-defend clause is decisive").

Two recent District Court cases provide further guidance regarding how *Walden* and *Lexington* should be applied when analyzing "minimum contacts" in the context of litigation against insurers. First, in *Givens v. Erie Ins. Co.*, No. CV 6:22-00842-HMH, 2022 WL 2759167, at *1-2, 9 (D.S.C. Jul. 14, 2022), an insurer incorporated in Pennsylvania provided insurance to a New York limited liability company which allegedly covered a vehicle rented in Georgia that was used in a fatal accident in South Carolina. The driver was found liable and assigned his rights against the insurer to the decedent's estate. *Id*. at *2. The estate then sued the insurer. *Id*. The insurer moved to dismiss. *Id*. This Court held that it lacked jurisdiction over the out-of-state insurer that had allegedly provided insurance for an out-of-state insured. *Id*. at *9. This Court explained that "[M]ere injury to a forum resident is not a sufficient connection to the forum… The proper question is… whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. (quoting *Walden*, 571 U.S. at 278).

More recently, in *Etienne v. Wartsilla N.A., Inc.*, 667 F.Supp.3d 235, 239 (S.D. Miss. 2023), the U.S. District Court for the Southern District of Mississippi provided valuable guidance regarding the application of *Lexington*. In *Etienne*, 667 F.Supp.3d at 239, Cory Etienne was injured in Mississippi in a vehicular accident involving a car rented by a company incorporated in Maryland with its principal place of business in Texas. Mr. Etienne sued the rental car company, which was allegedly the subsidiary of a Finnish company. The rental car company and the Finnish parent company were allegedly insured by an insurer domiciled in Ireland. *Id*. Mr. Etienne then attempted to add the insurer as an additional defendant. *Id*. The insurer moved to dismiss for lack of personal jurisdiction. *Id*. at 240. The District Court held that the insurer had no contact with

Mississippi, let alone the "minimum contacts" necessary to justify the application of personal jurisdiction. *Id*. at 248. The District Court considered the argument that a worldwide territorial coverage clause created contacts with Mississippi, but squarely rejected the argument. *Id*. at 249-50 (citing *Lexington*, 938 F.3d at 880-81). The District Court also rejected the argument that contact with Mississippi was created because the insurer could foresee that it might be sued in Mississippi. *Id*. at 250 (citing *Lexington*, 938 F.3d at 882 & 884, *World-Wide Volkswagen*, 444 U.S. at 295, and other cases). Finally, the District Court cautioned that many of the cases finding the existence of personal jurisdiction over out-of-state insurers based on broad territorial coverage clauses predated the U.S. Supreme Court's decision in *Nicastro* and the Supreme Court's "admonition" that "foreseeability of suit in a forum is not enough to justify a state's exercise of jurisdiction over a defendant." *Id*. at 251 (quoting *Lexington*, 938 F.3d at 884, and also citing *Walden*, 571 U.S. at 284-86, and *Nicastro*, 564 U.S. at 882-83).[4]

In this case, there are no allegations that any of the Defendants "targeted" South Carolina. BASF alleges that it is incorporated in Delaware and that its principal place of business is in New Jersey. Doc. 1 at ECF p. 4. BASF alleges that the Defendants' policies were issued to BASF's predecessor, but BASF alleges no information about where BASF's predecessor was located or where the policies were issued. Doc. 1 at ECF p. 4. Instead, BASF seeks to focus the Court's attention on *BASF's own connections to South Carolina*, such as BASF's predecessor's alleged (but unspecified) "operations, products, and interests in or relating to South Carolina" and the lawsuits pending against BASF in South Carolina. Doc. 1 at ECF pp. 10-11. However, under *Walden*, only the Defendants' conduct directed towards South Carolina, not BASF's contacts in

---

[4] In *Etienne*, 667 F.Supp.3d at 251, the District Court went even further than *Lexington* when it held that even a contractual duty to defend an insured in the forum state did not create the contacts necessary to establish personal jurisdiction in that forum.

the state or the foreseeability that BASF might be sued in South Carolina, can serve as the "minimum contacts" necessary to establish personal jurisdiction.  *See Walden*, 571 U.S. at 285.

Additionally, although BASF alleges that the Defendants included South Carolina within their coverage territory (Doc. 1 at ECF p. 10), under *Lexington*, that is <u>not</u> enough to establish the requisite minimum contacts.  Even if the Defendants may have *foreseen* that they might have been called upon to respond to claims in South Carolina, there are no allegations that any Defendants "targeted" South Carolina.  Therefore, the requirement set down by the U.S. Supreme Court in *Nicastro* is <u>not</u> satisfied.  Moreover, unlike in *ESAB* and *Rossman*, there are no allegations that the Defendants' owe BASF a *duty to defend*; instead, BASF alleges that the Defendants' policies require them to pay defense litigation fees and expenses.  This case is therefore distinguishable from *ESAB* and *Rossman*, and analogous to *Lexington*, where the court held that the lack of a duty-to-defend clause was dispositive in concluding that the insurers could <u>not</u> be haled into court wherever their insured happened to be sued.  *See Lexington*, 938 F.3d at 883 ("The absence of a duty-to-defend clause is decisive").  Accordingly, BASF's allegations do <u>not</u> establish the requisite "minimum contacts" with South Carolina to establish jurisdiction.

## 2.    The Exercise Of Personal Jurisdiction Over The Defendants Would <u>Not</u> Be Constitutionally Reasonable

Minimum requirements inherent in the concept of "fair play and substantial justice" may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities.  *Burger King*, 471 U.S. at 477–78.  Jurisdiction cannot be established if the defendant can present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.  *Id*.  The "minimum contacts" analysis and the reasonableness component of the due process analysis are interrelated in that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the contacts, the less a defendant need show in

terms of unreasonableness to defeat jurisdiction. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994); *see Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 479 (4th Cir. 1993) (the "insubstantial character" of the contacts to the state required "a more concerned focus" on the reasonableness component of the due process analysis); *see also* Richard L. Haig (ed.), 1 Bus. & Com. Litig. Fed. Cts. § 2:27 (5th ed. Nov. 2022) (explaining the application of the sliding scale and citing authority). Importantly, minimum contacts based on territory-of-coverage clauses and a right to defend the insured are qualitatively low on the due process scale. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998) ("… sole reliance on the territory of coverage clause creates contacts which are qualitatively low on the due process scale"); see also *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007) (quoting *OMI Holdings*).

In applying the reasonableness component of the due process analysis, the court considers: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477; see also *United States v. Batato*, 833 F.3d 413, 425 (4th Cir. 2016).

None of these factors favor litigation in South Carolina. The Defendants are unquestionably burdened by litigating in South Carolina given that none of them are incorporated in South Carolina or have their principal place of business in South Carolina. Doc. 1 at ECF pp. 5-10. In fact, several Defendants are alleged to be incorporated in foreign nations, including Bermuda, Germany, Switzerland, and the United Kingdom. Doc. 1 at ECF pp. 5-7 and 9-10. South Carolina only has minimal interest in adjudicating this dispute. Although BASF alleges that 70

underlying AFFF MDL lawsuits were filed in South Carolina or identified South Carolina as their home venue (Doc. 1 at ECF p. 11), that is only a small fraction of the "thousands" of underlying lawsuits that BASF is facing (Doc. 1 at ECF p. 11). Moreover, this action is not about the liability issues raised in the underlying lawsuits; it is about whether insurance coverage exists with respect to the underlying lawsuits. This action therefore involves the application of insurance policies issued by out-of-state insurers to a predecessor of BASF, a Delaware corporation located in New Jersey (Doc. 1 at ECF p. 4). Given these alleged facts, the Court can infer that South Carolina law is unlikely to apply to the interpretation of the policies that will be the focus of this coverage case.

In *ESAB*, 685 F.3d at 393, the Court of Appeals held that it was constitutionally reasonable to force an out-of-state insurer to defend itself in South Carolina because South Carolina had a "manifest interest" in adjudicating a coverage action *involving an insured based in South Carolina*. Similarly, in *Rossman*, 832 F.2d at 287, the Court of Appeals held that it was constitutionally reasonable to force an out-of-state insurer to defend itself in Virginia because *the insured was a Virginia resident*. This case is nothing like *ESAB* or *Rossman*. South Carolina has no "manifest interest" in adjudicating this case because BASF is <u>not</u> a citizen of South Carolina.

With respect to the third and fourth factors of the reasonableness analysis, there is no reason to assume that this Court is the only place, or even the most efficient place, for BASF to obtain convenient and effective relief. On the contrary, both the competing New York Action and the competing New Jersey Action include parties who were not sued in this action (see parties identified in Exhibits A and C, and summarized in Appendix A). Therefore, resolution of the other actions is likely to result in more effective and more complete relief.

Furthermore, it is clear that BASF itself recognizes that it can also obtain effective relief in the New Jersey Action, given that BASF itself filed that competing action (which also includes

parties not sued in this action). In that action, BASF identified New Jersey state court as "… the forum of [BASF's] choice" (see Exhibit C at ¶ 68). BASF's own choice of another forum underscores the unreasonableness of forcing the Defendants to litigate in this forum. *See ESAB*, 685 F.3d at 393 (acknowledging that South Carolina's interest may be diminished if the insured itself chooses to litigate in another state); *see also Foster v. Arletty 3 Sarl*, 278 F.3d 409, 416 (4th Cir. 2002) (the insured's attempt to litigate in another forum was a factor to consider in determining whether it was constitutionally reasonable to force the defendant to litigate in South Carolina).

On this issue, this case is significantly different from *In re Aqueous Film-Forming Foams*, 2023 WL 6846676, at *6, where this Court held that it was constitutionally reasonable for out-of-state insurers to defend themselves in South Carolina. In that case, this Court found that South Carolina was a "convenient, timely, and effective forum to adjudicate." *Id*. Here, the opposite is true: there are two more effective forums that can bring a more complete resolution to this action. This forum <u>cannot</u> completely resolve BASF's disputes with its insurers because there are parties present in the other forums who are not present here. By filing the New Jersey Action, BASF has itself demonstrated the unreasonableness of litigating this action in South Carolina.

Finally, the fifth factor of the reasonableness analysis focuses on whether the exercise of personal jurisdiction by the forum state affects the substantive social policy interests of other states or foreign nations. *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1297 (10th Cir. 2007). Great care must be exercised when considering personal jurisdiction in the international context. *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 103, 107 S. Ct. 1026, 1027, 94 L. Ed. 2d 92 (1987). As noted above, this case involves a dispute between out-of-state insurers – including insurers in foreign nations – and an out-of-state insured. The Court can infer that South Carolina law is unlikely to govern the coverage disputes.

Accordingly, the only substantive social policy interests in play are held by other states and other nations.  This factor further weighs against this Court extending its jurisdiction in this action.

For all these reasons, Coliseum respectfully asks the Court to dismiss this action because this Court lacks personal jurisdiction over these Defendants.

## IV.   THE COURT SHOULD DISMISS THIS CASE PURSUANT TO THE COMMON LAW DOCTRINE OF *FORUM NON CONVENIENS* OR, IN THE ALTERNATIVE, TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK

*Forum non conveniens* is a common law doctrine enabling a court to dismiss a case when a foreign forum is the more appropriate venue based on a range of convenience-related factors.  *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 207 (4th Cir. 2022).  Although *forum non conveniens* is often applied where the alternative forum is abroad, it also applies in rare instances where a state or territorial court is most convenient.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S. Ct. 1184, 1190, 167 L. Ed. 2d 15 (2007).  Where, as here, the plaintiff's choice of forum is not the plaintiff's home forum, the normal presumption in favor of the plaintiff's choice applies with less force.  *Id*. at 423.

In applying the doctrine of *forum non conveniens*, a District Court must determine whether the alternative forum is: (1) available; (2) adequate; and (3) more convenient in light of the public and private interests involved.  *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011).  Availability will ordinarily be satisfied when the defendant is amenable to process in the other jurisdiction.  *Id*. at 249.  A foreign forum is adequate when: (1) all parties can come within that forum's jurisdiction; and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in this court.  *Id*.  Here, there is no question that courts in both New York and New Jersey are available and adequate for this dispute.  BASF must agree because it filed its own competing action in New Jersey.

16

If the alternative forum is both available and adequate, the district court must weigh public and private interest factors, including: (1) the ease of access to sources of proof; (2) the availability of compulsory process for securing the attendance of unwilling witnesses; (3) the costs of obtaining the attendance of witnesses; (4) the ability to view premises; (5) the general facility and cost of trying the case in the selected forum; and (6) the public interest, including administrative difficulties, the local interest of having localized controversies decided at home, and the interest of trying cases where the substantive law applies. *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 200 (4th Cir. 2009); see also *Jiali Tang*, 656 F.3d at 249.[5]

As noted above, neither BASF nor any of the Defendants are citizens of South Carolina. Therefore, sources of proof and witnesses are likely to be found where BASF is located (Delaware or New Jersey) or in any of the states or foreign nations where the Defendants are located. Several Defendants, including Coliseum, are alleged to be located in New York. Although there are underlying lawsuits pending in South Carolina, the sources of proof and witnesses relevant to this case are those bearing on the existence, interpretation, and application of the Defendants' insurance policies – not the sources of proof and witnesses relevant to the underlying claims.

Additionally, as noted above, the Court can infer from the location of the parties that South Carolina law is unlikely to apply to the interpretation of the policies. Therefore, both New Jersey (where BSAF is located) and New York (where Coliseum and several other Defendants are alleged to be located) have a strong public interest in deciding this case and applying their own substantive law. South Carolina has no similar interest.

---

[5] To decide whether to transfer venue, the District Courts considers the following similar factors: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

Finally, dismissal on grounds of *forum non conveniens* is especially appropriate here where there are three competing actions.[6]   Furthermore, this action includes the least number of parties out of all three actions (see Appendix A).   Thus, this Court cannot completely resolve BASF's dispute with its insurers because some insurers are only present in other actions.   For the same reason, if the insurers have need to make claims against one another to allocate insurance payments between them, that would also be impossible to completely resolve in this action.   Accordingly, this action should be dismissed so that the parties can move forward with litigating this coverage dispute in either New York or New Jersey.[7]

## V.   THERE ARE OTHER GROUNDS UPON WHICH THIS ACTION SHOULD BE DISMISSED OR, IN THE ALTERNATIVE, STAYED

Coliseum joins and incorporates by reference the arguments set forth in the Partial AIU Insurers' Motion to Dismiss or, in the alternative, Stay this Action, including: (1) the argument that this Court should decline to exercise jurisdiction under general principles of law, as well as the abstention doctrine; and (2) BASF lacks capacity to sue in South Carolina under South Carolina's Door-Closing Statute.

Coliseum also joins and incorporates by reference the arguments set forth in Allstate Insurance Company's Motion to Dismiss, including the argument that this action should be dismissed under Fed. R. Civ. P. 12(b)(7) for failing to join all necessary and indispensable parties.

---

[6] The issue of competing actions with more complete parties was not addressed in this Court's prior decision in *In re Aqueous Film-Forming Foams*, 2023 WL 6846676, at *8.   Accordingly, that decision, which was decided under different facts, does not control the outcome of the *forum non conveniens* arguments advanced in this case.

[7] In addressing this Motion, the Court does not need to decide whether New York or New Jersey is the more appropriate forum.   The Court simply needs to decide that South Carolina is a less appropriate forum than either New York or New Jersey.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Coliseum respectfully requests that the Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2) and the common law doctrine of *forum non conveniens* or, in the alternative, transfer this action to the U.S. District Court for the Southern District of New York.

Dated: April 24, 2024                              Respectfully Submitted,

<u>/s/ Janice Holmes</u>
Janice Holmes
(Fed. I.D. No. 11366)
CLYDE & CO US LLP
1775 Pennsylvania Ave., 4th Floor
Washington, DC 20006
Telephone: (202) 747-5100
janice.holmes@clydeco.us


Jamie Sanders (*pro hac vice* forthcoming)
Seth Jaffe (*pro hac vice* forthcoming)
Michael Passman (*pro hac vice* forthcoming)
CLYDE & CO US LLP
30 S. Wacker Dr., Suite 2600
Chicago, IL 60606-7512
Telephone: (312) 635-7000
jamie.sanders@clydeco.us
seth.jaffe@clydeco.us
michael.passman@clydeco.us

*Counsel for Defendant Coliseum Reinsurance Company, as successor by merger to AXA Insurance Company, formerly known as Colonia Insurance Company, a New York Corporation*

19

## APPENDIX A
## INSURERS NAMED IN EACH ACTION

| South Carolina Action | New York Action | New Jersey Action |
|---|---|---|
| | ACE American Ins. Co. | ACE American Ins. Co. |
| AIU Ins. Co. | AIU Ins. Co. | AIU Ins. Co. |
| Allianz Global Risks US Ins. Co. | Allianz Global Risks US Ins. Co. | Allianz Global Risks US Ins. Co. |
| Allianz Versicherungs-Ag | Allianz Versicherungs-Ag | Allianz Versicherungs-Ag |
| Allstate Ins. Co. | Allstate Ins. Co. | Allstate Ins. Co. |
| AXA Group AG | AXA Group AG | AXA Group AG |
| AXA Ins. Co. | AXA Ins. Co. | AXA Ins. Co. |
| | Central National Ins. Co. Of Omaha | |
| | Certain London Market Ins. Companies | Certain London Market Ins. Companies |
| | Certain Underwriters At Lloyd's, London | Certain Underwriters At Lloyd's, London |
| Employers Mutual Casualty Co. | Employers Mutual Casualty Co. | Employers Mutual Casualty Co. |
| | | European Reinsurance Co. of Zurich |
| | Everest Reinsurance Co. | Everest Reinsurance Co. |
| | | Federal Ins. Co. |
| First State Ins. Co. | First State Ins. Co. | First State Ins. Co. |
| Granite State Ins. Co. | Granite State Ins. Co. | Granite State Ins. Co. |
| | | Greenwich Ins. Co. |
| HDI Global Ins. Co. | HDI Global Ins. Co. | HDI Global Ins. Co. |
| HDI Global SE | HDI Global SE | HDI Global SE |
| Ins. Co. Of North America | Ins. Co. Of North America | Ins. Co. Of North America |
| Ins. Co. Of The State Of Pennsylvania | Ins. Co. Of The State Of Pennsylvania | Ins. Co. Of The State Of Pennsylvania |
| Interstate Fire & Casualty Co. | Interstate Fire & Casualty Co. | Interstate Fire & Casualty Co. |
| | Lexington Ins. Co. | Lexington Ins. Co. |
| | | Midstates Reinsurance Corp. |
| | Munich Reinsurance America, Inc. | Munich Reinsurance America, Inc |
| | National Casualty Co. | National Casualty Co. |
| National Union Fire Ins. Co. Of Pittsburgh, Pa | National Union Fire Ins. Co. Of Pittsburgh, Pa | National Union Fire Ins. Co. Of Pittsburgh, Pa |
| New England Ins. Co. | | New England Ins. Co. |
| | New England Reins. Corp. | New England Reins. Corp. |
| | | Pacific Ins. Co. |

| South Carolina Action | New York Action | New Jersey Action |
|---|---|---|
| | | Safety National Casualty Corp. |
| | | Swiss Reinsurance Co. |
| RSA Ins. Group Limited | RSA Ins. Group Limited | RSA Ins. Group Limited |
| TIG Ins. Co. | TIG Ins. Co. | TIG Ins. Co. |
| Travelers Casualty And Surety Co. | Travelers Casualty And Surety Co. | Travelers Casualty & Surety Co. |
| Twin City Fire Ins. Co. | Twin City Fire Ins. Co. | Twin City Fire Ins. Co. |
| Westport Ins. Corp. | Westport Ins. Corp. | Westport Ins. Corp. |
| Zurich Ins. Group Ltd. | | Zurich Ins. Group Ltd. |
| | Zurich International (Bermuda) Limited | |