**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**
**Civil Action No.:** 2:24-cv-993-RMG

BASF CORPORATION, as successor in interest to CIBA CORPORATION,

          *Plaintiff*,

vs.

AIU INSURANCE COMPANY,

ALLIANZ VERSICHERUNGS-AG,

ALLSTATE INSURANCE COMPANY,

AXA VERSICHERUNG AG,

EMPLOYERS MUTUAL CASUALTY COMPANY,

EUROPEAN REINSURANCE COMPANY OF ZURICH,

FIREMAN'S FUND INSURANCE COMPANY,

FIRST STATE INSURANCE COMPANY,

GRANITE STATE INSURANCE COMPANY,

HDI GLOBAL INSURANCE COMPANY,

HDI GLOBAL SE,

INSCO LTD.,

INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

INTERSTATE FIRE & CASUALTY COMPANY,

MIDSTATES REINSURANCE CORPORATION,

NATIONAL CASUALTY COMPANY,

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

NEW ENGLAND INSURANCE COMPANY,

PACIFIC INSURANCE COMPANY,

SAFETY NATIONAL CASUALTY CORPORATION,

**FIRST AMENDED COMPLAINT**

(Jury Trial Demanded)

SWISS REINSURANCE COMPANY,

TIG INSURANCE COMPANY,

TRAVELERS CASUALTY & SURETY COMPANY,

TWIN CITY FIRE INSURANCE COMPANY,

WESTPORT INSURANCE CORPORATION, and

ZURICH REINSURANCE COMPANY LTD.,

*Defendants.*

Plaintiff BASF Corporation ("BASF" or "Ciba"), as successor-in-interest to Ciba Corporation ("Ciba Corp."), by and through undersigned counsel, by way of Amended Complaint against the defendant insurance companies identified below (collectively the "Defendant Insurers"), alleges as follows:

## NATURE OF THE ACTION

1.      This is an insurance coverage action for breach of contract and declaratory relief under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.  This action arises under umbrella and excess liability insurance policies issued by the Defendant Insurers that provide coverage to BASF, as successor-in-interest to Ciba Corp., for certain alleged liabilities arising from claims and legal causes of action in lawsuits, including lawsuits currently pending before this Court in the Aqueous Film-Forming Foams ("AFFF") Multi-District Litigation, Docket No. 2:18-2873(RMG) (the "MDL").

2.      Specifically, Ciba Corp. and/or its predecessor manufactured the surfactant Lodyne, which was used, *inter alia*, in connection with the manufacture of certain AFFF.

3.     BASF, as successor-in-interest to Ciba Corp., has been named as a defendant in thousands of underlying lawsuits, which were brought by individual claimants, including current and former military and civilian firefighters, public, quasi-public and private water providers, state and municipal governmental authorities, and others, that allegedly have suffered bodily injury, property damage or personal injury, or some combination thereof, which they claim resulted from exposure to, *inter alia*, Lodyne manufactured, designed, sold, supplied or distributed by Ciba Corp. (or its predecessor) and used in AFFF (the "AFFF Lawsuits").  These AFFF Lawsuits seek to hold BASF legally responsible for damages allegedly sustained by the underlying plaintiffs. The AFFF Lawsuits have been filed in various state courts, including in South Carolina, and also are pending in the MDL before the Honorable Richard M. Gergel, U.S.D.J., in this Court.

4.     By and through this action, BASF seeks insurance coverage for the AFFF Lawsuits, which the Defendant Insurers have failed and refused to provide.

5.     The Defendant Insurers' insurance policies, which insure BASF as the successor-in-interest to Ciba Corp., consist of umbrella and excess general liability insurance policies that provide coverage for alleged bodily and/or personal injury or property damage that took place during policy periods from 1976 to 1986 (the "Policies").  The Policies follow and incorporate the terms and conditions of their respective underlying policies, which impose a "duty to defend," and the Policies also require the Defendant Insurers to pay all sums, including the payment of defense litigation fees and expenses, for which their insured shall become legally obligated to pay which arise out of an occurrence.

6.     The AFFF Lawsuits allege an occurrence that is covered by the Policies, and the AFFF Lawsuits seek damages for bodily injury, property damage, or personal injury, as those

terms are used in the Policies.  The AFFF Lawsuits further allege that bodily injury, property damage, or personal injury occurred during the policy periods of the Policies.

7.      Accordingly, the Defendant Insurers have a duty to defend BASF in the AFFF Lawsuits, and are obligated to pay the litigation costs and expenses that BASF has incurred, and will continue to incur, in connection with the AFFF Lawsuits.

8.      All Defendant Insurers also have an obligation to acknowledge coverage and, up to the full amount of their respective insurance policy limits, to indemnify BASF for all sums incurred to satisfy any legal liability incurred in connection with the AFFF Lawsuits, including any judgment or settlement entered in those matters.

9.      BASF has satisfied all terms and conditions of the Policies.  Thus, BASF is entitled to the full benefit of the insurance coverage available under the Policies for the AFFF Lawsuits.

10.     BASF brings this action for breach of contract and declaratory relief pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, *et seq.*  This case involves an actual, justiciable controversy between and among BASF and the Defendant Insurers because the Defendant Insurers have failed and refused to acknowledge their obligation to provide insurance coverage for the AFFF Lawsuits as required by the Policies.

### **THE PARTIES**

### *Plaintiff*

11.     BASF is a corporation organized and existing under the laws of the state of Delaware, with its headquarters and principal place of business located in New Jersey at 100 Park Avenue, Florham Park, New Jersey 07932.

12.     The Policies were issued to Ciba-Geigy Corporation (among others), and BASF, as the legal successor to Ciba Corp., is an insured under the Policies and, in turn, is the real party in

interest in connection with the insurance claims being made under the Policies based on the following corporate history:  In 1996, Ciba-Geigy Corporation ("Ciba-Geigy") spun off its specialty chemicals business, which included the Lodyne product line, into a new entity called Ciba Specialty Chemicals Corporation ("Ciba Specialty"), which remained an insured under the Policies.  In 2007, Ciba Specialty changed its name to Ciba Corp. and, in 2009, BASF acquired Ciba Corp.  Ciba Corp. was later converted to BASF Performance Products LLC and then merged into BASF.  Pursuant to the agreements concerning the separation of Ciba-Geigy's historic business lines, BASF has the right to make claims under the Policies.

### *Defendant Insurers*

13.     **AIU**.  Defendant AIU Insurance Company ("AIU") is a corporation organized under the laws of the state of New York, with its principal place of business located in the state of New York.  Upon information and belief, at all relevant times, AIU was and is licensed to do and is doing business in the state of South Carolina.  AIU, along with certain other insurers as identified herein, is also referred to as "AIG" and is part of the AIG family of insurers.

14.     **Allianz AG**.  Upon information and belief, Defendant Allianz Versicherungs-AG ("Allianz AG") is a corporation organized under the laws of Germany, with its principal place of business located in Munich, Germany.  Upon information and belief, at all relevant times, Allianz AG was and is licensed to do and is doing business in the state of South Carolina.  Allianz AG is the same entity as, or successor-in-interest to those Policies issued by, Allianz Versicherungs-Aktiengesellschaft.  Allianz AG, along with certain other insurers as identified herein, is also referred to as "Allianz" and is part of the Allianz family of insurers.

15.     **Allstate**.  Defendant Allstate Insurance Company ("Allstate") is a corporation organized under the laws of the state of Illinois, with its principal place of business located in the

state of Illinois.  Upon information and belief, at all relevant times, Allstate was and is licensed to do and is doing business in the state of South Carolina.  Allstate is the successor-in-interest to those Policies issued by Northbrook Insurance Company and/or Northbrook Excess and Surplus Insurance Company.

16.     **AXA AG**.  Upon information and belief, Defendant AXA Versicherung AG ("AXA AG") is a corporation organized under the laws of Germany, with its principal place of business located in Cologne, Germany.  Upon information and belief, at all relevant times, AXA AG was and is licensed to do and is doing business in the state of South Carolina.  AXA AG is the successor-in-interest to those Policies issued by Colonia Versicherung Aktiengesellschaft.

17.     **Employers**.  Defendant Employers Mutual Casualty Company ("Employers") is a corporation organized under the laws of the state of Iowa, with its principal place of business located in the state of Iowa.  Upon information and belief, at all relevant times, Employers was and is licensed to do and is doing business in the state of South Carolina.

18.     **European Re**.  Defendant European Reinsurance Company of Zurich ("European Re") is a corporation organized under the laws of Switzerland, with its principal place of business located in Switzerland.  Upon information and belief, at all relevant times, European Re was and is licensed to do and is doing business in the state of South Carolina.  European Re is the successor-in-interest to those Policies issued by European General Reinsurance Company of Zurich.

19.     **Fireman's**.  Upon information and belief, Defendant Fireman's Fund Insurance Company ("Fireman's") is a corporation organized under the laws of the state of Illinois, with its principal place of business located in the state of Illinois.  Upon information and belief, at all relevant times, Fireman's was and is licensed to do and is doing business in the state of South

Carolina. Fireman's, along with certain other insurers as identified herein, is also referred to as "Allianz" and is part of the Allianz family of insurers.

20. **First State**. Defendant First State Insurance Company ("First State") is a corporation organized under the laws of the state of Connecticut, with its principal place of business located in the state of Connecticut. Upon information and belief, at all relevant times, First State was and is licensed to do and is doing business in the state of South Carolina. First State, along with certain other insurers as identified herein, is also referred to as "Hartford" and is part of the Hartford family of insurers.

21. **Granite**. Defendant Granite State Insurance Company ("Granite") is a corporation organized under the laws of the state of New York, with its principal place of business located in the state of Illinois. Upon information and belief, at all relevant times, Granite was and is licensed to do and is doing business in the state of South Carolina. Granite, along with certain other insurers as identified herein, is also referred to as "AIG" and is part of the AIG family of insurers.

22. **HDI Company**. Upon information and belief, Defendant HDI Global Insurance Company ("HDI Company") is a corporation organized under the laws of Illinois, with its principal place of business located in Hannover, Germany. Upon information and belief, at all relevant times, HDI Company was and is licensed to do and is doing business in the state of South Carolina. HDI Company is the successor-in-interest to those Policies issued by Haftpflichtverband Der Deutschen Industrie V.a.G. HDI Company, along with certain other insurers as identified herein, is also referred to as "HDI" and is part of the HDI family of insurers.

23. **HDI SE**. Upon information and belief, Defendant HDI Global SE ("HDI SE") is a corporation organized under the laws of Germany, with its principal place of business located in Hannover, Germany. Upon information and belief, at all relevant times, HDI SE was and is

licensed to do and is doing business in the state of South Carolina. HDI SE is the successor-in-interest to those Policies issued by Gerling-Konzern Allgemeine Versicherungs-Aktiengesellschaft. HDI SE, along with certain other insurers as identified herein, is also referred to as "HDI" and is part of the HDI family of insurers.

24. **INSCO**. Upon information and belief, Defendant INSCO Ltd. ("INSCO") is a corporation organized under the laws of Bermuda, with its principal place of business located in Bermuda. Upon information and belief, at all relevant times, INSCO was and is licensed to do and is doing business in the state of South Carolina. INSCO is the successor-in-interest to those Policies issued by INSCO Insurance Co.

25. **ICOSP**. Defendant Insurance Company of the State of Pennsylvania ("ICOSP") is a corporation organized under the laws of the state of Illinois, with its principal place of business located in the state of New York. Upon information and belief, at all relevant times, ICOSP was and is licensed to do and is doing business in the state of South Carolina. ICOSP, along with certain other insurers as identified herein, is also referred to as "AIG" and is part of the AIG family of insurers.

26. **Interstate**. Defendant Interstate Fire & Casualty Company ("Interstate") is a corporation organized under the laws of the state of Illinois, with its principal place of business located in the state of Illinois. Upon information and belief, at all relevant times, Interstate was and is licensed to do and is doing business in the state of South Carolina. Interstate, along with certain other insurers as identified herein, is also referred to as "Allianz" and is part of the Allianz family of insurers.

27. **Midstates**. Defendant Midstates Reinsurance Corporation ("Midstates") is a corporation organized under the laws of the state of Illinois, with its principal place of business

located in the state of Ohio.  Upon information and belief, at all relevant times, Midstates was and is licensed to do and is doing business in the state of South Carolina.  Midstates is the successor-in-interest to those Policies issued by Mead Reinsurance Corporation.

28.    **National Casualty**.  Defendant National Casualty Company ("National Casualty") is a corporation organized under the laws of the state of Ohio, with its principal place of business located in the state of Ohio.  Upon information and belief, at all relevant times, National Casualty was and is licensed to do and is doing business in the state of South Carolina.

29.    **National Union**.    Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a corporation organized under the laws of the state of Pennsylvania, with its principal place of business located in the state of New York.  Upon information and belief, at all relevant times, National Union was and is licensed to do and is doing business in the state of South Carolina.  National Union, along with certain other insurers as identified herein, is also referred to as "AIG" and is part of the AIG family of insurers.

30.    **New England**.  Defendant New England Insurance Company ("New England") is a corporation organized under the laws of the state of Connecticut, with its principal place of business located in the state of Massachusetts.  Upon information and belief, at all relevant times, New England was and is licensed to do and is doing business in the state of South Carolina.  New England, along with certain other insurers as identified herein, is also referred to as "Hartford" and is part of the Hartford family of insurers.

31.    **Pacific**.  Defendant Pacific Insurance Company ("Pacific") is a corporation organized under the laws of the state of Connecticut, with its principal place of business located in the state of Connecticut.  Upon information and belief, at all relevant times, Pacific was and is licensed to do and is doing business in the state of South Carolina.

32. **Safety**.    Defendant Safety National Casualty Corporation ("Safety") is a corporation organized under the laws of Missouri, with its principal place of business located in Missouri.  Upon information and belief, at all relevant times, Safety was and is licensed to do and is doing business in the state of South Carolina.  Safety is the successor-in-interest to those Policies issued by Safety Mutual Casualty Corporation.

33. **Swiss Re**.  Defendant Swiss Reinsurance Company ("Swiss Re") is a corporation organized under the laws of Switzerland, with its principal place of business located in Switzerland.  Upon information and belief, at all relevant times, Swiss Re was and is licensed to do and is or was doing business in the state of South Carolina.

34. **TIG**.  Defendant TIG Insurance Company ("TIG") is a corporation organized under the laws of the state of New Hampshire, with its principal place of business located in the state of California.  Upon information and belief, at all relevant times, TIG was and is licensed to do and is doing business in the state of South Carolina.  TIG is the successor-in-interest to those Policies issued by Gibraltar Insurance Company.

35. **Travelers**.  Defendant Travelers Casualty & Surety Company ("Travelers") is a corporation organized under the laws of the state of Connecticut, with its principal place of business located in the state of Connecticut.  Upon information and belief, at all relevant times, Travelers was and is licensed to do and is doing business in the state of South Carolina.  Travelers is the successor-in-interest to those Policies issued by Aetna Casualty & Surety Company.

36. **Twin City**.  Defendant Twin City Fire Insurance Company ("Twin City") is a corporation organized under the laws of the state of Indiana, with its principal place of business located in the state of Connecticut.  Upon information and belief, at all relevant times, Twin City was and is licensed to do and is doing business in the state of South Carolina.  Twin City, along

with certain other insurers as identified herein, is also referred to as "<u>Hartford</u>" and is part of the Hartford family of insurers.

37.    **Westport**.    Defendant Westport Insurance Corporation ("<u>Westport</u>") is a corporation organized under the laws of the state of Missouri, with its principal place of business located in the state of Missouri.  Upon information and belief, at all relevant times, Westport was and is licensed to do and is doing business in the state of South Carolina.  Westport is the successor-in-interest to those Policies issued by Manhattan Fire & Marine, and Puritan Insurance Company.

38.    **Zurich**.    Defendant Zurich Reinsurance Company Ltd. ("<u>Zurich</u>") is a Swiss corporation domiciled in Zurich, Switzerland.  Upon information and belief, at all relevant times, Zurich was and is licensed to do and is doing business in the state of South Carolina.  Zurich is the successor-in-interest to those Policies issued by Zurich International LTD. and/or Zurich Insurance Company.

**JURISDICTION AND VENUE**

39.    This Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332. Complete diversity exists because no defendant is domiciled in the same states as plaintiff (Delaware and New Jersey).  The amount in controversy exceeds $75,000 exclusive of interest and costs.

40.    This Court has personal jurisdiction over each Defendant Insurer because each Defendant Insurer: (i) is licensed to do business in South Carolina; (ii) has engaged, and continues to engage, in substantial business activities in this State, including but not limited to selling insurance to policyholders in this State; (iii) has insured, and continues to insure, risks located in this State, *inter alia*, through the issuance of the Policies for the benefit of BASF; (iv) included South Carolina within the coverage territory of each of the Policies at issue, thereby insuring South

Carolina risks relating to Ciba Corp.'s operations, products, and interests in or relating to South Carolina; (v) through their Policies, promised to provide insurance coverage, including a defense, for legal liabilities that may be imposed on a nationwide basis in connection with products that would be, and were, sold on a nationwide basis, including in South Carolina; and/or (vi) did not include any territorial limit within the Policies that would preclude BASF from pursuing coverage from the Defendant Insurers for all sums that it must incur to defend and resolve the AFFF Lawsuits currently pending in this State. In addition, at least 80 of the AFFF Lawsuits were directly filed in the state and federal courts of South Carolina or were filed in the AFFF MDL and identified the District of South Carolina as their home venue.

41.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because (i) each Defendant Insurer is subject to personal jurisdiction in this district; (ii) a substantial part of the events giving rise to this action occurred in this district, because, *inter alia*, the Policies promise to provide insurance coverage for alleged legal liabilities that may arise, *inter alia*, in this State; and (iii) the MDL for the AFFF Lawsuits is venued in this district and there is substantial overlap between the facts that will be developed in the MDL to address the AFFF Lawsuits and the scope of the Defendant Insurers' coverage obligations for those lawsuits. In addition, at least 80 of the AFFF Lawsuits were directly filed in the state and federal courts of South Carolina or were filed in the AFFF MDL and identified the District of South Carolina as their home venue.

42.     Ciba-Geigy and Ciba Corp. both were qualified to do business in South Carolina, with Ciba-Geigy registered to do business in South Carolina in 1978.

43.     Furthermore, BASF has significant operations in, and contacts with, South Carolina, both historically and presently. BASF has been qualified to do business in South Carolina since 1978 and has played an important role in South Carolina's economy over the past

few decades. BASF has multiple manufacturing facilities in South Carolina, including in the communities of Clemson, Mauldin, and White Stone. BASF's White Stone facility was acquired by BASF in 1973 and manufactures surfactants. BASF's Mauldin facility was built in 1960, acquired by BASF in 2010 and currently manufactures over 150 products, including surfactants and co-surfactants. BASF's Clemson facility was purchased by BASF in 1985 and currently manufactures polyurethanes for diverse applications. BASF employs approximately 750 people in South Carolina and has invested hundreds of millions of dollars in the state over the last few years through taxes, payroll, purchases, and charitable contributions.

## **FACTUAL BACKGROUND**

### *The AFFF Lawsuits*

44.    BASF has been named as a defendant in thousands of AFFF Lawsuits which allege bodily injury, personal injury, and/or property damage or some combination thereof caused by chemicals known as per- and polyfluoroalkyl substances ("PFAS"). BASF is a defendant in the AFFF Lawsuits in connection with Lodyne, a product that was manufactured by Ciba Corp. (or its predecessor) and for which third parties seek to hold BASF legally liable. The Lodyne used in AFFF is a surfactant. Surfactants, in turn, are an ingredient in AFFF.

45.    From approximately 1976 until 1991, Ciba Corp. (or its predecessor) sold Lodyne to Ansul, a company that manufactures fire suppression products, including AFFF. After 1991, Ciba Corp. sold Lodyne to other AFFF manufacturers such as National Foam and Chemguard.

46.    The AFFF manufacturers to whom Ciba sold Lodyne during these periods used that Lodyne in connection with manufacturing AFFF. On information and belief, those manufacturers manufactured, sold, or distributed their AFFF products nationwide, including, AFFF that was manufactured, sold, distributed, and used within South Carolina. For example, in *State of South*

*Carolina v. 3m Company*, No. 2:23-cv-05734, filed by the Office of the Attorney General of South Carolina, the State alleges that Ansul historically "manufactured, designed, marketed, distributed, and/or sold AFFF containing PFOA and/or its chemical precursors within the United States, including South Carolina"; that starting in the mid-1960s, National Foam "formulated, manufactured, marketed, sold and transported in commerce various AFFF formulations, including fluoroprotein form and alcohol-resistant foam, all of which contained C8 PFAS variants that have been discovered in South Carolina"; and that by the 1980's, Chemguard "began to manufacture, design, market, distribute, and/or sell AFFF containing PFOA and/or its chemical precursors within the United States, . . . including South Carolina."

47.    The AFFF Lawsuits include all MDL AFFF Lawsuits and includes all similarly situated lawsuits now pending in any other courts or jurisdictions or which may be asserted in the future, whether in the MDL or in other courts of competent jurisdiction.

48.    The Policies provide coverage for the AFFF Lawsuits.

49.    The AFFF Lawsuits: (a) allege an "occurrence" as that term is defined in the Policies; (b) seek damages for bodily injury, personal injury or property damage (or combination thereof) that occurred during one or more of the policy periods of the Policies; and (c) seek to impose a legal liability against BASF, as successor-in-interest to Ciba Corp.  The allegations in the AFFF Lawsuits require the Defendant Insurers to defend BASF, and pay "all sums" that BASF is obligated to pay that is an "ultimate net loss" as defined in the Policies, including: (a) BASF's litigation costs and expenses in the AFFF Lawsuits; and (b) any judgment or settlement that BASF must satisfy to resolve the AFFF Lawsuits.

50.    Each of the Policies contain a prior insurance or non-cumulation provision that compresses insurance coverage for a continuing injury or damage claims, such as the AFFF

Lawsuits, into a singular policy year or, as applicable, years. As a result, under applicable law, the Defendant Insurers are required to pay the defense costs on an "all sums" basis and BASF is entitled to select which policy year or policy years will apply to such claims.

51.    The Defendant Insurers are liable for loss under their Policies in excess of the limits of their respective underlying insurance for a particular occurrence covered by said underlying insurance.

52.    The AFFF Lawsuits seek damages based on causes of action sounding in, *inter alia*, product liability, strict liability, including strict products liability, failure to warn, nuisance, negligence, and trespass.

53.    BASF vigorously has defended the AFFF Lawsuits and disputes all allegations of liability and wrongdoing in the AFFF Lawsuits. BASF will continue to vigorously defend the AFFF Lawsuits. The Defendant Insurers have wrongfully failed to defend BASF and/or fund the defense in the AFFF Lawsuits.

54.    The Defendant Insurers have breached the Policies by failing and refusing to defend and acknowledge their obligations to pay BASF for the litigation costs and expenses that have been, and will continue to be incurred, to defend the AFFF Lawsuits.

55.    The Defendant Insurers have failed and refused to acknowledge their obligations under the Policies to defend BASF and/or pay BASF or on its behalf all sums for which BASF may be held legally responsible to resolve the AFFF Lawsuits, whether through settlement, judgment, or otherwise. For example, the Defendant Insurers have breached the Policies by refusing to pay or acknowledge their indemnity obligations for a $316.5 million settlement BASF reached with a nationwide class of public water systems that detected PFAS in their drinking water sources, which they allege to be associated with the use of AFFF products ("Water District Product

-15-

Liability Claims").[1] Some of these AFFF products were made using surfactant Lodyne made by Ciba.

56.    None of the exclusion or other policy terms or conditions relied upon by the Defendant Insurers apply to excuse or minimize the Defendant Insurers' obligations to provide coverage for the AFFF Lawsuits.

## PROCEDURAL BACKGROUND

57.    On February 27, 2024, BASF filed this action, Docket No. 2:24-cv-993-RMG (the "First Filed D.S.C. Action") against certain of the Defendant Insurers.  The First Filed D.S.C. Action seeks insurance coverage for the AFFF Lawsuits.

58.    On March 4, 2024, Underwriters at Lloyd's and London Market Companies filed a retaliatory action against BASF and certain of BASF's insurers in the Supreme Court of the State of New York, New York County, Index No. 651150/2024, which BASF immediately removed to the United States District Court for the Southern District of New York, Docket No. 1:24-cv-01684-JHR (the "Second Filed New York Action").

59.    The Second Filed New York Action is likewise an insurance coverage case where Underwriters at Lloyd's and London Market Companies seek declaratory relief and allege that no insurance coverage is owed to BASF for the AFFF Lawsuits under substantially the same insurance policies that are the subject of the First Filed D.S.C. Action.

60.    Pursuant to the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, on March 7, 2024, BASF filed a Notice of a Potential Tag-Along Action,

---

[1] Pursuant to the settlement agreement, BASF will pay $4 million on or about July 15, 2024 and $312.5 million on March 1, 2025. This settlement is subject to approval by the MDL Court and other contingencies. The settlement does not constitute an admission of liability or wrongdoing by BASF or Ciba.

notifying the Judicial Panel on Multidistrict Litigation that the Second Filed New York Action should be transferred to the MDL pending in this district.

61.    As a result of the Second Filed New York Action, BASF, as the true plaintiff in this insurance coverage dispute, was then forced to file a third action in the Superior Court of New Jersey to secure and preserve its rights and ability to have its rights to insurance coverage for the AFFF Lawsuits litigated against all of its insurers in the forum of its (alternate) choice.

62.    BASF now files this Amended Complaint to, *inter alia*, add additional Defendant Insurers, correct the names of certain Defendant Insurers, remove certain Defendant Insurers that have been voluntarily dismissed without prejudice by BASF, add a cause of action for breach of the Defendant Insurers' duty to indemnify in light of a recent settlement of certain AFFF Lawsuits, and add and/or amend relevant language from the Policies.

## **THE POLICIES**

63.    During the policy period(s) referenced below, AIG issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| AIG Insurer | Policy Period |
|---|---|
| AIU | April 1, 1977 – April 1, 1978 |
| AIU | April 1, 1978 – April 1, 1979 |
| AIU | April 1, 1979 – April 1, 1980 |
| AIU | April 1, 1980 – April 1, 1981 |
| AIU | April 1, 1981 – April 1, 1982 |
| AIU | April 1, 1982 – April 1, 1983 |
| AIU | April 1, 1983 – April 1, 1984 |
| AIU | April 1, 1984 – April 1, 1985 |
| Granite | April 1, 1976 – April 1, 1977 |
| Granite | April 1, 1978 – April 1, 1979 |
| Granite | April 1, 1979 – April 1, 1980 |

| | |
|---|---|
| Granite | April 1, 1980 – April 1, 1981 |
| Granite | April 1, 1981 – April 1, 1982 |
| Granite | April 1, 1982 – April 1, 1983 |
| Granite | April 1, 1983 – April 1, 1984 |
| Granite | April 1, 1984 – April 1, 1985 |
| ICOSP | April 1, 1976 – April 1, 1977 |
| ICOSP | April 1, 1977 – April 1, 1978 |
| National Union | April 1, 1976 – April 1, 1977 |
| National Union | April 1, 1977 – April 1, 1978 |
| National Union | April 1, 1978 – April 1, 1979 |
| National Union | April 1, 1979 – April 1, 1980 |
| National Union | April 1, 1980 – April 1, 1981 |
| National Union | April 1, 1981 – April 1, 1982 |
| National Union | April 1, 1982 – April 1, 1983 |
| National Union | April 1, 1983 – April 1, 1984 |
| National Union | April 1, 1984 – April 1, 1985 |

64.     During the policy period(s) referenced below, Allianz issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| Allianz Insurer | Policy Period |
|---|---|
| Fireman's | April 1, 1976 – April 1, 1977 |
| Fireman's | April 1, 1977 – April 1, 1978 |
| Allianz AG | April 1, 1977 – April 1, 1978 |
| Allianz AG | April 1, 1978 – April 1, 1979 |
| Allianz AG | April 1, 1979 – April 1, 1980 |
| Allianz AG | April 1, 1980 – April 1, 1981 |
| Allianz AG | April 1, 1981 – April 1, 1982 |
| Allianz AG | April 1, 1982 – April 1, 1983 |
| Allianz AG | April 1, 1983 – April 1, 1984 |
| Allianz AG | April 1, 1984 – April 1, 1985 |
| Allianz AG | April 1, 1985 – April 1, 1986 |
| Interstate | April 1, 1976 – April 1, 1977 |

65.     During the policy period(s) referenced below, Allstate issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| Allstate Insurer | Policy Period |
|---|---|
| Allstate | April 1, 1976 – April 1, 1977 |
| Allstate | April 1, 1977 – April 1, 1978 |
| Allstate | April 1, 1978 – April 1, 1979 |
| Allstate | April 1, 1979 – April 1, 1980 |
| Allstate | April 1, 1980 – April 1, 1981 |
| Allstate | April 1, 1981 – April 1, 1982 |
| Allstate | April 1, 1982 – April 1, 1983 |

66.     During the policy period(s) referenced below, AXA AG issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| AXA Insurer | Policy Period |
|---|---|
| AXA AG | April 1, 1977 – April 1, 1978 |
| AXA AG | April 1, 1978 – April 1, 1979 |

67.     During the policy period(s) referenced below, Employers issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| Employers Insurer | Policy Period |
|---|---|
| Employers | April 1, 1978 – April 1, 1979 |
| Employers | April 1, 1979 – April 1, 1980 |
| Employers | April 1, 1980 – April 1, 1981 |
| Employers | April 1, 1981 – April 1, 1982 |

68.     During the policy period(s) referenced below, European Re issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| European Re Insurer | Policy Period |
|---|---|
| European Re | April 1, 1979 – April 1, 1980 |
| European Re | April 1, 1980 – April 1, 1981 |

69.     During the policy period(s) referenced below, Hartford issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| Hartford Insurer | Policy Period |
|---|---|
| First State | April 1, 1976 – April 1, 1977 |
| New England | April 1, 1984 – April 1, 1985 |
| Twin City | April 1, 1982 – April 1, 1983 |
| Twin City | April 1, 1983 – April 1, 1984 |
| Twin City | April 1, 1984 – April 1, 1985 |
| Twin City | April 1, 1985 – April 1, 1986 |

70.     During the policy period(s) referenced below, HDI issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| HDI Insurer | Policy Period |
|---|---|
| HDI SE | April 1, 1976 – April 1, 1977 |
| HDI SE | April 1, 1977 – April 1, 1978 |
| HDI SE | April 1, 1978 – April 1, 1979 |
| HDI SE | April 1, 1979 – April 1, 1980 |
| HDI SE | April 1, 1980 – April 1, 1981 |
| HDI SE | April 1, 1981 – April 1, 1982 |
| HDI SE | April 1, 1982 – April 1, 1983 |
| HDI SE | April 1, 1983 – April 1, 1984 |

| HDI SE | April 1, 1984 – April 1, 1985 |
| HDI SE | April 1, 1985 – April 1, 1986 |
| HDI Company | April 1, 1978 – April 1, 1979 |
| HDI Company | April 1, 1979 – April 1, 1980 |
| HDI Company | April 1, 1980 – April 1, 1981 |
| HDI Company | April 1, 1981 – April 1, 1982 |
| HDI Company | April 1, 1982 – April 1, 1983 |
| HDI Company | April 1, 1983 – April 1, 1984 |
| HDI Company | April 1, 1984 – April 1, 1985 |
| HDI Company | April 1, 1985 – April 1, 1986 |

71.    During the policy period(s) referenced below, INSCO issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| INSCO Insurer | Policy Period |
| --- | --- |
| INSCO | April 1, 1979 – April 1, 1980 |
| INSCO | April 1, 1980 – April 1, 1981 |
| INSCO | April 1, 1981 – April 1, 1982 |

72.    During the policy period(s) referenced below, Midstates issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| Midstates Insurer | Policy Period |
| --- | --- |
| Midstates | April 1, 1984 – April 1, 1985 |

73.    During the policy period(s) referenced below, National Casualty issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| National Casualty Insurer | Policy Period |
| --- | --- |

| National Casualty | April 1, 1985 – April 1, 1986 |
|---|---|

74.    During the policy period(s) referenced below, Pacific issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| Pacific Insurer | Policy Period |
|---|---|
| Pacific | April 1, 1985 – April 1, 1986 |

75.    During the policy period(s) referenced below, Safety issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| Safety Insurer | Policy Period |
|---|---|
| Safety | April 1, 1984 – April 1, 1985 |

76.    During the policy period(s) referenced below, Swiss Re issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| Swiss Re Insurer | Policy Period |
|---|---|
| Swiss Re | April 1, 1978 – April 1, 1979 |

77.    During the policy period(s) referenced below, TIG issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| TIG Insurer | Policy Period |
|---|---|
| TIG | April 1, 1979 – April 1, 1980 |
| TIG | April 1, 1980 – April 1, 1981 |
| TIG | April 1, 1981 – April 1, 1982 |

| | |
|---|---|
| TIG | April 1, 1982 – April 1, 1983 |
| TIG | April 1, 1983 – April 1, 1984 |
| TIG | April 1, 1984 – April 1, 1985 |

78.    During the policy period(s) referenced below, Travelers issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| Travelers Insurer | Policy Period |
|---|---|
| Travelers | April 1, 1976 – April 1, 1977 |
| Travelers | April 1, 1977 – April 1, 1978 |
| Travelers | April 1, 1978 – April 1, 1979 |
| Travelers | April 1, 1979 – April 1, 1980 |
| Travelers | April 1, 1980 – April 1, 1981 |
| Travelers | April 1, 1981 – April 1, 1982 |
| Travelers | April 1, 1982 – April 1, 1983 |
| Travelers | April 1, 1983 – April 1, 1984 |
| Travelers | April 1, 1984 – April 1, 1985 |
| Travelers | April 1, 1985 – April 1, 1986 |

79.    During the policy period(s) referenced below, Westport issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| Westport Insurer | Policy Period |
|---|---|
| Westport | April 1, 1976 – April 1, 1977 |
| Westport | April 1, 1977 – April 1, 1978 |

80.    During the policy period(s) referenced below, Zurich issued or subscribed to at least the following Policies (bearing policy no. 10502) at one or more excess layers, under which insurance coverage for the AFFF Lawsuits is owed to BASF:

| Zurich Insurer | Policy Period |
|---|---|
| Zurich | April 1, 1977 – April 1, 1978 |
| Zurich | April 1, 1981 – April 1, 1982 |
| Zurich | April 1, 1982 – April 1, 1983 |
| Zurich | April 1, 1983 – April 1, 1984 |
| Zurich | April 1, 1984 – April 1, 1985 |
| Zurich | April 1, 1985 – April 1, 1986 |

## CAUSES OF ACTION

### COUNT I
**(Declaratory Judgment)**
**(Duty to Defend and/or Pay Defense Costs and Litigation Expenses)**

81.    BASF repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

82.    Under the Policies, the Defendant Insurers have a duty to defend BASF in connection with the AFFF Lawsuits and/or pay defense costs and litigation expenses already paid or incurred, or to be incurred, by BASF in connection with the AFFF Lawsuits.

83.    BASF has paid and incurred substantial defense costs and litigation expenses, which are covered under the Policies, to defend itself in the AFFF Lawsuits.

84.    The Defendant Insurers have refused to defend BASF in connection with the AFFF Lawsuits, and have also refused to pay and/or acknowledge their obligation to pay for any defense costs and litigation expenses under the Policies already paid or incurred by BASF in connection with the AFFF Lawsuits.

85.    The Defendant Insurers' failure and refusal to defend BASF and pay BASF for its defense costs and litigation expenses already incurred, and to be incurred, in connection with the AFFF Lawsuits constitutes a breach of the Policies and has caused, and will continue to cause, BASF to incur significant damages that are covered by the Policies.

86.     As a result, an actual and justiciable controversy exists between BASF and the Defendant Insurers regarding the Defendant Insurers' duty to defend and/or its obligations to pay defense costs and litigation expenses under the Policies.

**COUNT II**
**(Breach of Contract)**
**(Duty to Defend and/or Pay Defense Costs and Litigation Expenses)**

87.     BASF repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

88.     Under the Policies, the Defendant Insurers have a duty to defend BASF in connection with the AFFF Lawsuits and/or to pay defense costs and litigation expenses already paid or incurred, or to be incurred, by BASF in connection with the AFFF Lawsuits.

89.     BASF has paid and incurred substantial defense costs and litigation expenses, which are covered under the Policies, to defend itself in the AFFF Lawsuits.

90.     In breach of the Policies, the Defendant Insurers have refused to defend BASF in connection with the AFFF Lawsuits, and have also refused to pay and/or acknowledge their obligation to pay for any defense costs and litigation expenses under the Policies already paid or incurred, or to be incurred, by BASF in connection with the AFFF Lawsuits.

91.     The Defendant Insurers' failure and refusal to defend BASF and/or pay BASF for its defense costs and litigation expenses in connection with the AFFF Lawsuits constitutes a breach of the Policies and has caused, and will continue to cause, BASF to incur significant damages that are covered by the Policies.

**COUNT III**
**(Declaratory Judgment)**
**(Indemnification Obligations)**

92.    BASF repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

93.    The Defendant Insurers have a duty to pay all sums incurred by, or to be incurred by, BASF to resolve the AFFF Lawsuits through settlement or satisfaction of any judgment entered, or otherwise.

94.    The Defendant Insurers have refused to pay or have refused to acknowledge their indemnity obligations for any settlements or judgments incurred by BASF in the AFFF Lawsuits. For example, the Defendant Insurers have breached the Policies by refusing to pay or acknowledge their indemnity obligations for a $316.5 million settlement BASF reached with a nationwide class of public water systems that detected PFAS in their drinking water systems, which they allege to be associated with the use of AFFF products. Some of these AFFF products were made using surfactant Lodyne made by Ciba.

95.    Because of the Defendant Insurers' failure and refusal to pay on behalf of BASF, or to acknowledge its indemnity obligations for, any settlements or judgments incurred or to be incurred in connection with the AFFF Lawsuits, including the settlement of the Water District Product Liability Claims, an actual and justiciable controversy exists between BASF and the Defendant Insurers regarding the Defendant Insurers' obligations under the Policies.

## COUNT IV
### (Breach of Contract)
### (Indemnification Obligation)

96.    BASF repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

97.     The Defendant Insurers have a duty to pay all sums incurred by, or to be incurred by, BASF to resolve the AFFF Lawsuits through settlement or satisfaction of any judgment entered, or otherwise.

98.     For example, the Defendant Insurers have breached the Policies by refusing to pay or acknowledge their indemnity obligations for a $316.5 million settlement BASF reached with a nationwide class of public water systems that detected PFAS in their drinking water sources, which they allege to be associated with the use of AFFF products. Some of these AFFF products were made using surfactant Lodyne made by Ciba.

99.     In breach of the Policies, the Defendant Insurers have refused to pay or have refused to acknowledge their indemnity obligations for the settlement of these covered AFFF Lawsuits.

100.    The Defendant Insurers' failure and refusal to pay on behalf of BASF, or to acknowledge its indemnity obligations for, any settlements or judgments incurred or to be incurred in connection with the AFFF Lawsuits, including the settlement of the Water District Product Liability Claims, has caused, and will continue to cause, BASF to incur significant damages that are covered by the Policies.

## **PRAYER FOR RELIEF**

WHEREFORE, BASF respectfully demands judgment against the Defendant Insurers as follows:

A.     As to the First Count, a declaration that the Defendants Insurers have a duty to defend BASF in connection with the AFFF Lawsuits and pay BASF's defense costs and litigation expenses already incurred, and to be incurred, to defend the AFFF Lawsuits.

B.     As to the Second Count: award BASF compensatory, consequential, and other damages that BASF has suffered, in an amount to be determined at trial.

C.    As to the Third Count: a declaration that the Defendant Insurers are required to pay all sums incurred by BASF in connection with the resolution of the AFFF Lawsuits, whether resolved by settlement, judgment, or otherwise.

D.    As to the Fourth Count: award BASF compensatory, consequential, and other damages that BASF has suffered, in an amount to be determined at trial.

E.    As to all Counts: an order obligating the Defendant Insurers to pay (i) all costs incurred by BASF in bringing this action, including attorneys' fees and expenses and experts' fees, (ii) pre- and post-judgment interest; and (iii) such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

This 22nd day of May, 2024

Respectfully Submitted,

  /s/David C. Kimball
David C. Kimball
ROBINSON, BRADSHAW & HINSON, P.A.
202 East Main Street
Rock Hill, South Carolina 29730
(803) 325-2900
dkimball@robinsonbradshaw.com

Lynda A. Bennett (*pro hac vice*)
Eric Jesse (*pro hac vice*)
Heather Weaver (*pro hac vice*)
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 262-6700
lbennett@lowenstein.com
ejesse@lowenstein.com
hweaver@lowenstein.com

*Attorneys for BASF Corporation*